IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROY SHRODE, AS TRUSTEE OF THE HILL COUNTRY TRUST, ET AL., | § § § | |
| *Plaintiffs/Counter-Defendants*, | § § § | |
| AND | § § | |
| GARY MARTIN | § § | |
| *Third-Party Defendant,* | § § | |
| vs. | § § | Civil Action No. 1:19-cv-00657-RP |
| STEPHEN BLAIR SILVERBERG, | § § | |
| *Defendant,* | § § | |
| AND | § § | |
| FCI CAPITAL LLC | § § | |
| *Intervenor,* | § § | |
| AND | § § | |
| CAPITAL TECHNOLOGY SOLUTIONS, INC. | § § § | |
| *Third-Party Defendant.* | § | |

---

**DEFENDANT STEPHEN BLAIR SILVERBERG'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR DECLARATORY JUDGMENT OF ENTITLEMENT TO PERIODIC ADVANCEMENT AND/OR REIMBUSEMENT OF EXPENSES**

---

Defendant Stephen Blair Silverberg files this motion for partial summary judgment on his declaratory judgment claim for periodic advancement and/or reimbursement of legal and other expenses incurred in connection with this litigation, as required by the company agreement of

1

Bedrock Funding Management, LLC.  In support thereof, Mr. Silverberg respectfully shows the following:

## I.      SUMMARY OF MOTION

Mr. Silverberg seeks summary judgment on his declaratory judgment claim that he is entitled to advancement from Bedrock Funding Management, LLC ("**Bedrock**") of legal fees and other expenses that he has incurred and will incur in connection with his defense of claims asserted against him in this action.[1]  The dispute before this Court is simple, and Mr. Silverberg's entitlement to advancement is clear.

Section 2.06 of Bedrock's First Amended and Restated Company Agreement (the "**Company Agreement**") requires that Bedrock periodically advance or reimburse Mr. Silverberg's litigation expenses if he (1) is or was a "Covered Person" under the Company Agreement (such as a manager of Bedrock or a manager of a member of Bedrock); (2) becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the operations or affairs of Bedrock or the Company Agreement; and (3) he furnishes Bedrock a written undertaking to repay any amounts advanced if he is ultimately found not to be entitled to indemnification under the Company Agreement.  A true and complete copy of the Company Agreement is appended hereto at Exhibit A-1.

There is no dispute that Mr. Silverberg was and is a manager of Bedrock; Plaintiffs and Bedrock have brought claims against him in this action precisely because he allegedly acted improperly in that role.  For this reason, there is also no dispute that this action arises out of or in connection with the operations or affairs of Bedrock or its Company Agreement.  Finally, Mr. Silverberg's counsel has sent not one, but *two*, written demands for advancement and

---

[1] *See* Ex. A-4, Silverberg's Third Amended Counterclaims, ¶¶ 67-70.

reimbursement, stating that Mr. Silverberg agrees to repay the amounts if it is ultimately determined that he is not entitled to indemnification under the Company Agreement.

This ends the inquiry, and entitles Mr. Silverberg to advancement. Bedrock's refusal to do so lacks any basis in law or fact. This Court should order Bedrock to comply with its obligations to periodically advance or reimburse the litigation expenses that its manager, Mr. Silverberg, has and will continue incurring in this action.

## II.     BACKGROUND

**A.     Relevant Factual Background**

**1.     The Company Agreement contains separate provisions for the advancement of litigation expenses and indemnification.**

Bedrock is a Texas limited liability company which is governed by the Company Agreement and Texas law.[2] The Company Agreement provides, in relevant part:[3]

> **(a) Neither the Managers, the Members, their Affiliates nor any of their respective shareholders, officers, directors, members, managers, employees or agents (individually a "Covered Person") may be liable to the Company, any Member, or any other Person for any act (including, without limitation, any negligent act) performed or omitted by such Covered Person in good faith and in the belief that such act or omission was in or was not opposed to the best interests of the Company, _provided_, that such act or omission was not fraud, willful misconduct, or a material violation of this Agreement by such Covered Person. No Covered Person may be liable to the Company, the Member, or any other Person, for any action of any other Person, including, without limitation any employee or agent of the Covered Person, _provided_, such action is within the scope of the purposes of the Company and the Covered Person seeking exculpation satisfies the parameters of the preceding sentence.**

This provision of the Company Agreement protects company managers (as "Covered Persons") from incurring any liability for their acts or omissions, provided that such acts or omissions were not fraud, willful misconduct or a material violation of the Company Agreement.

---

[2] Ex. A-1, Company Agreement, § 1.02.

[3] _Id._ at § 2.06 (emphasis in original).

To effectuate this provision and protect the Covered Persons, the Company Agreement includes robust indemnification and periodic advancement provisions, located at Section 2.06(b). The advancement language—which is the subject of this motion—is highlighted below:

> **(b) . . . [T]o the fullest extent allowed or permitted under any provision of applicable law . . . the Company shall indemnify, defend, and hold harmless each Covered Person (individually, an "Indemnitee") to the extent of the Company Assets, from and against any losses, expenses, judgments, fines, settlements, and damages incurred by the Company or such Indemnitee (including, without limitation, costs, expenses, and attorneys' fees expended in the settlement or defense of any such claim) arising out of any claim based upon acts (including, without limitation, negligent acts) performed or omitted by the Company or such Indemnitee in good faith and in the belief that such act or omission was in or was not opposed to the best interests of the Company, provided, that such act or omission was not fraud, willful misconduct, or a material violation of this Agreement by such Indemnitee. In the event that any Indemnitee becomes involved in any capacity in any action, proceeding or investigation in connection with any matter arising out of or in connection with this Agreement or the operations or affairs of the Company, the Company shall periodically advance to or reimburse such Indemnitee for its legal and other expenses (including the cost of any investigation and preparation) as incurred in connection therewith upon receipt of an undertaking in writing by or on behalf of such Indemnitee to repay such amounts to the extent it shall be determined ultimately that such Indemnitee is [not] entitled to indemnification hereunder. All decisions of the Company concerning the indemnity of any Indemnitee shall be made by a majority of the disinterested Managers on the Board.**

Under a plain reading of this advancement provision, an Indemnitee (defined as a "Covered Person"), "*shall*" receive periodic advancement or reimbursement of legal and other expenses from Bedrock, when such expenses are incurred in connection with a legal action or investigation brought against the Indemnitee. The only other requirement that an Indemnitee must meet in order to be entitled to periodic advancement is that they provide a written promise to repay the advanced amounts if it is ultimately determined that the Indemnitee is actually not entitled to indemnification (i.e., that the Indemnitee committed acts that the indemnity does not cover, such as fraud).

It is worth briefly mentioning that, due to a typographical error, the word "not" was

inadvertently excluded in the penultimate sentence of Section 2.06(b): ". . . upon receipt of an undertaking in writing by or on behalf of such Indemnitee to repay such amounts to the extent it shall be determined ultimately that such Indemnitee is **[not]** entitled to indemnification hereunder." Texas law does not permit such errors to frustrate the parties' intent.

When interpreting a contract, Texas courts will examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless.[4] Typographical errors in a contract will yield to the well-established doctrine that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document, and to this end, words, names, and phrases obviously intended may be supplied.[5]

If the word "not" is omitted as written in Section 2.06(b), the entirety of that Section 2.06 is rendered meaningless.  As written, it would then require an Indemnitee to repay Bedrock all advanced funds even if the Indemnitee was ultimately found to be entitled to indemnification.

This would frustrate the stated purpose of Section 2.06 and the clear intent of the contracting parties which is to "indemnify, defend, and hold harmless each Covered Person . . . from and against any losses . . . including, without limitation, costs, expenses, and attorneys' fees expended in the settlement or defense of any such claim."  Indeed, paragraphs (a), (b) and (c) of Section 2.06 would each be contradicted if the Court fails to read the word "not" into this sentence.

Because the omission of the word "not" in the affected sentence would render the entirety

---

[4] *See JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016).

[5] *See Enbridge Pipelines (E. Tex.), L.P. v. Cent. Crude, Inc.,* Civil Action No. H-4:11-cv-00335, 2012 U.S. Dist. LEXIS 95025, at *8-9 (S.D. Tex. July 10, 2012) ("Typographical errors in a writing will be corrected to reflect the drafter's intent."); *Falk & Fish*, *LLP v. Pinkston's Lawnmower & Equip.*, 317 S.W.3d 523, 527–28 (Tex. App.—Dallas 2010, no pet.) (citing *City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.3d 532, 539 (Tex. App.—Houston [14th Dist] 2001, pet. denied)).

of Section 2.06 meaningless, that word must be read into the provision when construing the contract to give meaning to all the provisions and effectuate the clear intention of the parties.

Finally, the Company Agreement states Bedrock ***must*** indemnify an Indemnitee against all losses arising out of any proceeding in which the Indemnitee has been wholly successful:

> **(c) The Company must indemnify an Indemnitee from and against any losses, expenses, judgments, fines, settlements, and damages incurred by the Company or such Indemnitee (including, without limitation, costs, expenses, and attorneys' fees expended in the settlement or defense of any such claim) arising out of any proceeding in which the Indemnitee has been wholly successful on the merits or otherwise, in the defense of the proceeding.**

### 2. Bedrock has repeatedly refused Mr. Silverberg's requests for advancement.

Mr. Silverberg began incurring actual litigation expenses on or about March 21, 2018—shortly after he was physically assaulted and threatened by fellow Bedrock investor Gary Martin.[6] Mr. Silverberg retained counsel to defend against plaintiffs Hill Country Trust and Goldstar Investments Ltd.'s investigation which has since morphed into this lawsuit.[7] He has since incurred a variety of additional costs and expenses, including attorneys' fees, court costs, travel expenses for himself and his attorneys, deposition expenses, copies, printing, and litigation vendor costs.[8] Mr. Silverberg will continue to incur significant expenses in this legal action until trial is completed, and thereafter, he will continue to incur significant expenses if any appeals are taken.[9]

On May 17, 2018, Mr. Silverberg (through his counsel) sent a letter to Bedrock's general counsel requesting confirmation that Bedrock would provide periodic advancement of legal expenses as required by the Company Agreement.[10] In that letter, Mr. Silverberg agreed to repay

---

[6] Ex. A, Affidavit of Stephen Blair Silverberg ("Silverberg Aff.") at ¶ 3.

[7] *Id.* at ¶¶ 3-4.

[8] *Id.* at ¶ 4.

[9] *Id.*

[10] Ex. A-5, 05/17/2018 Letter from C. Peele to T. Jarvis.

the funds advanced or reimbursed to him to the extent that it was ultimately determined that he was not entitled to indemnification under the Company Agreement.[11]

Bedrock replied to Mr. Silverberg on May 21, 2018, stating that, in order to be entitled to indemnity, the acts or omissions of Mr. Silverberg "must have been taken in good faith, in the belief that his acts or omissions were in or were not opposed to the best interests of the company, and that such acts or omissions were not fraudulent, willful misconduct, or otherwise a material breach of [the Company Agreement]."[12]  Bedrock then requested all relevant "documents and communications" so that the other managers could evaluate whether Mr. Silverberg's "conduct brings him within the indemnity provision of the [Company] Agreement."[13]

Mr. Silverberg responded to Bedrock's letter on June 14, 2018, again demanding that Bedrock honor its obligation to him as a manager of the company, and begin periodically advancing the legal fees he was incurring as a result of the lawsuit.[14]  Importantly, Mr. Silverberg pointed out that Bedrock was conflating the issue of *indemnification* with the separate issue of *advancement*.[15]  Mr. Silverberg explained that the question of whether he is entitled to periodic advancement of his legal expenses during the pendency of the action is not contingent on whether he is ultimately entitled to indemnification.[16]  Mr. Silverberg pointed out that the Company Agreement does not allow Bedrock to withhold advancement by determining—at the outset of the lawsuit and before liability has been determined—that he did not act in good faith, that he

---

[11] *Id.*

[12] Ex. A-6, 05/21/2018 letter from T. Cleveland to C. Peele.

[13] Ex. A-6, 05/21/2018 letter from T. Cleveland to C. Peele.

[14] Ex. A-7, 06/14/2018 letter from C. Peele to T. Cleveland.

[15] *Id.*

[16] *Id.*

committed willful misconduct, or violated the Company Agreement.[17]

Further, Mr. Silverberg demonstrated (once again) that he had met all the requirements that entitle him to immediate advancement of legal expenses under the Company Agreement: (1) Mr. Silverberg was an Indemnitee under the Company Agreement; (2) Mr. Silverberg was a party to an action, proceeding, or investigation; (3) the claims against Mr. Silverberg arise out of actions he allegedly took and duties he allegedly owed as a manager of Bedrock, thus the action was "in connection with . . . the operations or affairs of the company;" and (4) a written undertaking had been provided wherein Mr. Silverberg promised to repay the amounts advanced to the extent it was *ultimately* determined that he was not entitled to indemnification.[18]

In this June 14 letter, Mr. Silverberg provided (for a second time) a written agreement and undertaking to repay Bedrock for all advances of legal and other expenses in connection with this legal action in the event it should ultimately be determined that he was not entitled to indemnity.[19]

On June 18, 2018, Bedrock responded that it disagreed that Mr. Silverberg was entitled to advancement of his legal fees for this action, but failed to explain why it was taking that position.[20]

In light of Bedrock's response, there is a justiciable controversy over whether Mr. Silverberg is entitled to periodic advancement under the Company Agreement. Consequently, Mr. Silverberg has asserted a declaratory judgment claim and now moves for summary judgment, asking this Court to declare that he is entitled to periodic advancement or reimbursement from Bedrock of the legal and other expenses he has incurred and may continue to incur in connection with the claims asserted against him by the Plaintiffs and Bedrock in this case.

---

[17] *Id.*

[18] *See id.* (citing to the Company Agreement at § 2.06(b)).

[19] *Id.*

[20] Ex. A-8, 06/18/2018 letter from T. Cleveland to C. Peele.

**B.**     **Procedural Background**

**1.**     **A Texas state court and Bedrock's counsel both indicated that this advancement issue is properly decided on summary judgment.**

Earlier in this dispute, Mr. Silverberg's then-counsel sought to enforce the advancement provision in Travis County state court.  Rather than move for summary judgment, however, Mr. Silverberg's then-counsel asked the court to enter a temporary restraining order ("**TRO**") against Bedrock, forcing it to advance Mr. Silverberg's legal expenses.

The district court denied the application for a TRO on the record without explicitly stating its reasons.  However, counsels' arguments and the court's questioning at that hearing centered on whether a TRO was the appropriate procedural vehicle by which to compel advancement—not on whether Mr. Silverberg was entitled to such advancement.[21]  Specifically, the Travis County court noted that the issue of advancement was one that should "be determined on a . . . Motion for Advancement as set out in the *Aguilar* case, <u>not a TRO</u>."[22]  When addressing Mr. Silverberg's then-counsel, that court also stated, "what the Court really needs to focus on is have you met your burden as it relates to the elements of a TRO.  And because it is a money damage; that's what you are asking for, money . . . . for the purposes of meeting the elements of TRO it would seem to me that you're not able to do that."[23]

Bedrock's counsel also acknowledged that a motion for summary judgment was the appropriate method to consider the issue of advancement, as opposed to a TRO.  During arguments, Bedrock's counsel summarized, "All of these things just show, Your Honor, this is going to be a Summary Judgment issue.  It is not a TRO issue.  And we think this should properly be set up to

---

[21] *See generally,* Ex. B, TRO Hearing Transcript.

[22] *Id.* at pp. 24-25 (emphasis added).

[23] *Id.* at pp. 28-29.

handle the jurisdictional venue issue and then Summary Judgment can by [sic] brought."[24]

Because the relief requested by Mr. Silverberg did not merely maintain the status quo (which is the purpose of a TRO),[25] a TRO was not the appropriate procedural vehicle by which to seek advancement.  Rather, as Texas courts have stated, the appropriate vehicle to enforce such advancement provisions is a motion for summary judgment.[26]

### 2.   Mr. Silverberg moves for partial summary judgment on the advancement issue.

After the undersigned made an appearance on behalf of Mr. Silverberg, the Travis County action was discontinued, and Mr. Silverberg amended his counterclaims in the matter now before this Court to add a declaratory judgement claim for periodic advancement.[27]  Mr. Silverberg filed a motion for summary judgment on the advancement issue in the Burnet County state court, and that motion was set to be heard on June 28.  However, two days before that motion was to be heard, this case was removed to federal court by third-party defendant Capital Technology Solutions, Inc.  Mr. Silverberg, therefore re-files this motion, seeking to enforce his rights under the Company Agreement and compel the periodic advancement and reimbursement of the expenses he has incurred and will incur in this action.

---

[24] *Id.* at pp. 27-28.

[25] *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976).

[26] *See In re Aguilar*, 344 S.W.3d 41, 52-53 (Tex. App.—El Paso 2011, no pet.) (noting that a motion for summary judgment is the proper procedural vehicle to compel the advancement of fees prior to final judgment, and construing the movant's motion to compel advancement as a motion for summary judgment); *Gunderson v. Kristofek*, No. 05-18-00740-CV, 2018 Tex. App. LEXIS 7514, at *1-3 (Tex. App.—Dallas Sept. 12, 2018, pet. denied) (observing that a motion for summary judgment was a proper vehicle for bringing an advancement claim, and noting that the court could not construe an advancement order as a temporary injunction because it did not preserve the status quo).

[27] *See* Ex. A-4, Silverberg's Third Amended Counterclaims, ¶¶ 67-70.

### III.    ARGUMENT AND AUTHORITIES

#### A.    Legal standard

Under Rule 56, a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[28]  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.[29]

"[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[30]  The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court."[31]

Declaratory judgment is appropriate if a "justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought."[32]  It is particularly appropriate where the claimant seeks "a declaration of rights, status, or other legal relations" under a contract, "either before or after there has been a breach" of that contract.[33]  And as noted above, Texas courts have held that a summary judgment motion is the appropriate

---

[28] Fed. R. Civ. P. 56(c).

[29] *See Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013)

[30] *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002)

[31] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[32] *Myer v. Americo Life, Inc.*, A-06-CA-599 LY, 2007 U.S. Dist. LEXIS 6528, at *14 (W.D. Tex. Jan. 30, 2007) (internal quotations omitted); *see* Tex. Civ. Prac. & Rem. Code § 37.002(b).

[33] Tex. Civ. Prac. & Rem. Code § 37.002(b); *see* Porterfield v. Deutsche Bank Nat'l Trust Co., SA: 16-CV-105-DAE, 2016 U.S. Dist. LEXIS 127058, at *21-22 (W.D. Tex. Sept. 19, 2016).

procedural vehicle for bringing contractual advancement/reimbursement claims such as this one.[34]

**B.      Law of Advancement: advancement and indemnity are distinct legal concepts.**

Texas law requires advancement where the company's governing documents so provide. The Texas Business Organizations Code grants Texas limited liability companies broad authority to periodically advance litigation expenses to its managers.  Section 8.002(b) of the Texas Business Organizations Code provides that "[t]he governing documents of a . . . limited liability company may adopt provisions of this chapter or may contain other provisions, which will be enforceable, relating to: . . . (2) advancement of expenses . . . ."  Texas courts interpreting this statute have noted that, "Texas allows a limited liability company the same broad freedom to craft its own advancement provisions as does Delaware."[35]  And to the extent Texas courts have not yet spoken on the matter of advancement provisions, they look to Delaware law, since Delaware courts are widely recognized as subject-matter experts on the topic of corporate advancement provisions.[36]

Importantly, although indemnification and advancement are correlative rights, they give rise to separate and distinct legal actions,[37] because indemnification and advancement are distinct

---

[34] *See In re Aguilar*, 344 S.W.3d 41, 52-53 (Tex. App.—El Paso 2011, no pet.) (noting that a motion for summary judgment is the proper procedural vehicle to compel the advancement of fees prior to final judgment, and construing the movant's motion to compel advancement as a motion for summary judgment); *Gunderson v. Kristofek*, No. 05-18-00740-CV, 2018 Tex. App. LEXIS 7514, at *1-3 (Tex. App.—Dallas Sept. 12, 2018, pet. denied) (observing that a motion for summary judgment was a proper vehicle for bringing an advancement claim, and noting that the court could not construe an advancement order as a temporary injunction because it did not preserve the status quo).

[35] *See L Series, LLC v. Holt*, No. 02-17-00415-CV, 2019 Tex. App. LEXIS 1579, at *11 (Tex. App.—Fort Worth Feb. 28, 2019, pet. filed).

[36] *See In re Aguilar*, 344 S.W.3d 41, 46-47 (Tex. App.—El Paso 2011, no pet.) (noting that courts throughout the country, including Texas courts, look to Delaware for guidance on matters of corporate law, and pointing out that the "law of advancement, in particular, is 'a Delaware specialty.'").

[37] *Id.* at 46 (citing *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. Supr. 2005)).

legal concepts.[38]  While an action for periodic advancement is a separate cause of action from indemnification, it is an "especially important corollary to indemnification," because it provides corporate officials with immediate interim relief from the burden of expending their personal financial resources paying for their defense.[39]

Because they are separate legal concepts, "[t]he right to advancement is not dependent on the right to indemnification[,]"[40] the advancing company's belief that advancement is no longer in its best interests, or the manager's ability to repay.[41]  Even the manager's alleged "conduct in the underlying suit is irrelevant," because periodic advancement is "allowed even when the official seeking advancement is being sued by the corporation that must advance the litigation expense," including for alleged breach of fiduciary duty, fraud, and similar causes of action.[42]  Nor does it matter whether the manager seeks periodic advancement for his defense against original claims, or counterclaims brought in response to his own claims.[43]

It should also be noted that, because advancement is a separate right from indemnification, an advancement claim "will be effectively moot at the conclusion of the case" and there is no adequate remedy by appeal.[44]  Thus, it is crucial that this Court enforce Mr. Silverberg's right to

---

[38] *Id.* at 48.

[39] *Id.* (quoting *Homestore*, 888 A.2d at 212).

[40] *Id.* at 46 (quoting *Homestore*, 888 A.2d at 211) (emphasis added).

[41] *See Aguilar*, 344 S.W.3d at 46-51.

[42] *Id.* at 46-49.

[43] *See, e.g., Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 398-99 (Del. Ch. 2009) (requiring advancement for defense against counterclaims because "[w]hen a corporation plays offense, the covered person it claims against is 'defending'"); *Mooney v. Echo Therapeutics, Inc.*, No. 10054-VCP, 2015 Del. Ch. LEXIS 146, at *14 & n.29 (Del. Ch. May 28, 2015) (citing *Paolino*, and noting satiation where company counterclaims against individual seeking advancement "more readily satisfies the 'defending' requirement").

[44] *Aguilar*, 344 S.W.3d at 55-56 (granting mandamus petition because no adequate remedy by appeal for denial of advancement).

periodic advancement immediately.

*In re Aguilar* is the seminal Texas case regarding advancement provisions such as this one. Examining the policy underlying the enforcement of advancement provisions, the Texas court of appeals in *Aguilar* noted that, "'indemnification encourages corporate service by protecting an official's personal financial resources from depletion by the expenses incurred during litigation that results from the official's service.'"[45] The court went on to quote the Delaware Supreme Court for the important principle underlying the policy of enforcing periodic advancement/reimbursement provisions, noting that, "'Advancement is an especially important corollary to indemnification' because it provides corporate officials with immediate interim relief from the burden of paying for a defense."[46] It also pointed out clearly that while there is a correlative relationship between advancement and indemnification, "'they are separate and distinct legal actions'" and "'[t]he right to advancement is not dependent on the right to indemnification.'"[47]

In ordering the company to reimburse and advance litigation costs, the *Aguilar* court held that a corporate official is entitled to advancement of legal fees even when he or she is accused of defrauding the corporation. "The corporation cannot defend against the advancement claim on the ground that it now believes the fiduciary to have been unfaithful because 'it is in those very cases that the right to advancement attaches most strongly.'"[48] "Thus, whether referred to as 'breach of fiduciary duty' or 'unclean hands,' [the defendant's] conduct in the underlying suit is irrelevant."[49]

---

[45] *Id.* at 46 (quoting *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. Supr. 2005)).

[46] *Id.*

[47] *Id.*

[48] *Id.* at 47 (quoting *James River Mgmt. Co., Inc. v. Kehoe*, 674 F.Supp.2d 745, 750 (E.D.Va.2009)).

[49] *Id.* at 47-48.

**C.      Mr. Silverberg is entitled to periodic advancement or reimbursement because he has satisfied all prerequisites in the Company Agreement.**

Mr. Silverberg meets the specific terms of the mandatory advancement provision of the Company Agreement.   From that provision, there arise three prerequisites for the periodic advancement of legal fees and other expenses:  (1) that the person requesting advancement be an "Indemnitee," (2) that the person be "involved in any capacity in any action, proceeding, or investigation in connection with any matter arising out of or in connection with this Agreement or the operations or affairs of the Company," (3) and Bedrock receives an undertaking in writing by the Indemnitee to repay such amounts if it is "ultimately determined" at the conclusion of the action, proceeding or investigation that the Indemnitee is not entitled to indemnification.

As to the <u>first</u> requirement, Mr. Silverberg is an Indemnitee as that term is defined in the Company Agreement.  The Company Agreement states that Bedrock's managers, members, and their affiliates are each "Covered Persons": "Neither the Managers, the Members, their Affiliates nor any of their respective shareholders, officers, directors, members, managers, employees or agents (individually a 'Covered Person') . . . ."[50] Then, in the following paragraph, the Company Agreement defines each Covered Person as an "Indemnitee": "[T]he Company shall indemnify, defend, and hold harmless each Covered Person (individually, an 'Indemnitee') . . . ."[51]

Mr. Silverberg is both a manager of Bedrock, and is a "Member Affiliate" of Bedrock because he is an owner and representative of Lakeway Lavaca 2, LLC, one of the named Members of Bedrock.[52]   Bedrock does not dispute that Mr. Silverberg is a "Covered Person" under the

---

[50] Ex. A-1, Company Agreement, § 2.06(a).

[51] *Id.* at § 2.06(b).

[52] *See* Ex. A, Silverberg Aff. at ¶ 2; Ex. A-1, Company Agreement, ¶ 2.01(b)(iii) (naming Mr. Silverberg as a manager of Bedrock).

Company Agreement, and expressly admitted that he is a Covered Person in a response to Mr. Silverberg's requests for admissions:[53]

> **REQUEST #31:** Defendant is a "Covered Person" as defined in Section 2.06 of the Bedrock Company Agreement.
>
> **RESPONSE:** Admit.

As a "Covered Person," Mr. Silverberg is also an "Indemnitee" for the purpose of paragraphs 2.06(b) and 2.06(c) of the Company Agreement.

Mr. Silverberg anticipates that Bedrock will take the position that an "Indemnitee" is one who is accused merely of *negligent* acts or omissions, taken with the best interests of Bedrock in mind, as opposed to one who is accused of willful misconduct. But the term "Indemnitee" is never defined that way, and the remainder of Section 2.06 forecloses this possibility.

For example, if the term "Indemnitee" is limited to only those Covered Persons who are accused of acting with "good faith" negligence, then the written undertaking to return any advanced funds would be pointless. Under Section 2.06, an Indemnitee who merely faces accusations of "good faith" negligence is entitled to complete indemnification, regardless of whether or not it is ultimately successful on the merits.[54] However, the point of the written undertaking to return the advanced amounts is precisely for Indemnitees such as Mr. Silverberg, who have been accused of willful misconduct. A written undertaking to repay Bedrock in the event it is ultimately determined that the Indemnitee is not entitled to indemnification only makes sense for Indemnitees who have been accused of willful misconduct, fraud, and the like. If it is ultimately determined at the end of the proceeding that they *did* commit fraud or willful

---

[53] *See* Ex. A-9, Bedrock's Responses to Interrogatories and RFAs, p. 18.

[54] *See* Ex. A-1, Company Agreement, § 2.06

misconduct, then they must pay those amounts back.  Those accused of mere negligence do not pay back those amounts, even if they are unsuccessful on the merits.

Likewise, Section 2.06(c) says that an "Indemnitee" is entitled to indemnification (a distinct concept from advancement) if they prevail on the merits of *any* proceeding brought against them, without regard to whether it was a claim for negligence, fraud, or anything else.[55]  This necessarily means that the term "Indemnitee" does not only apply to those who have been accused of "good faith" negligence only.  Rather, it applies to all Covered Persons who prevail on *any* claims brought against them in "any proceeding," regardless of the nature of those claims.  To say otherwise would gut the protections afforded to Covered Persons who are accused of willful misconduct, but who are wholly successful on the merits of those claims.

Simply put, as a "Covered Person," Mr. Silverberg is also an "Indemnitee," according to Section 2.06(b) of the Company Agreement.  This is based on a straightforward reading of Section 2.06, which gives effect to all the paragraphs in that Section.  The provision requiring an Indemnitee to provide a written undertaking to repay the advanced amounts is pointless, unless Bedrock is indeed obligated to advance costs to "Indemnitees" who ultimately may not be entitled to indemnification.  When interpreting a contract, courts in this Circuit will attempt to harmonize all provisions of a contract, so that none will be rendered meaningless.[56]  Accordingly, this first element is satisfied.

<u>Second</u>, Mr. Silverberg has become involved in an action or proceeding—namely, this

---

[55] *Id.* at § 2.06(c).

[56] *See JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016).

lawsuit—by virtue of being the named defendant in this lawsuit.[57]  There is no question that the claims asserted against him in this lawsuit by Plaintiffs (fellow investors in Bedrock) and Bedrock itself arise out of or in connection with the Company Agreement or the operations or affairs of Bedrock.  Each claim against Mr. Silverberg in this action arises from some duty that he allegedly breached or action that he took by virtue of his position as a manager and officer of Bedrock.

For example, Plaintiffs have sued Mr. Silverberg for breach of fiduciary duty for allegedly causing Bedrock to spend money on software that Mr. Silverberg owns, and for allegedly usurping Bedrock's corporate opportunities and stealing its software.[58]  These claims clearly arise out of or in connection with the operations or affairs of Bedrock, because they involve the expenditure of Bedrock's funds for software that Mr. Silverberg agreed to license to Bedrock, and also Bedrock's alleged "corporate opportunities."  No one can seriously argue that Plaintiffs' claims do not arise out of or in connection with the "operations or affairs" of Bedrock or the Company Agreement.

Plaintiffs have also sued Mr. Silverberg for a breach of the Company Agreement, which is a claim that obviously "arises out of or in connection with" the Company Agreement.[59]  And Plaintiffs have sued Mr. Silverberg for misappropriation of Bedrock's trade secrets.  In sum, Plaintiffs claim that Mr. Silverberg used Bedrock's trade secrets to develop software, and that he is now out using Bedrock's trade secrets and that software in violation of the Company Agreement and Texas law.[60]  From the face of this pleading, it is clear that Plaintiffs' allegations arise out of or in connection with both the Company Agreement and the operations and affairs of Bedrock.

---

[57] *See* Ex. A-2, Plaintiffs' Original Petition; Ex. A-3, Bedrock's First Amended Counterclaims and Third-Party Petition.

[58] *See* Ex. A-2, Plaintiffs' Original Petition, ¶¶ 46-54; 55-69; 70-80.

[59] *Id.* at ¶¶ 81-90.

[60] *Id.* at ¶¶ 91-99.

Bedrock itself has also brought affirmative claims against Mr. Silverberg, accusing him of breaching his fiduciary duties to Bedrock, converting Bedrock's assets, misappropriating Bedrock's trade secrets, and breaching the Company Agreement.[61] For the same reasons discussed above, these claims also arise out of or in connection with the Company Agreement and the operations or affairs of Bedrock, and this element is satisfied.

Third, Mr. Silverberg must provide "an undertaking in writing" to repay the amounts advanced or reimbursed to him to the extent it is ultimately determined he is not entitled to indemnification. This precise written undertaking was provided to Bedrock not once, but *twice* in letters from Mr. Silverberg's attorney, as detailed above.[62]

That ends the inquiry, and establishes as a matter of law that Mr. Silverberg is entitled to periodic advancement or reimbursement of all legal and other expenses incurred defending against the Plaintiffs and Bedrock's claims to date and in the future.

Mr. Silverberg further anticipates Bedrock will argue that its board members have voted not to indemnify Mr. Silverberg, and therefore he is not entitled to advancement. Bedrock bases this argument on the last sentence of Section 2.06(b), which reads: "All decisions of the Company concerning the indemnity of any Indemnitee shall be made by a majority of the disinterested Managers on the Board."

But this argument once again incorrectly conflates the concept of *indemnity* with the concept of *advancement*. This sentence in the Company Agreement deals specifically with *indemnity*, and says nothing about the Indemnitee's right to *advancement*. Based on this sentence, the Bedrock board has discretion on whether (and to what extent) to *indemnify* an Indemnitee, but

---

[61] Ex. A-3, Bedrock's First Amended Counterclaims and Third-Party Petition, ¶¶ 38–76.

[62] *See* Ex. A-5, 05/17/2018 letter from C. Peele to T. Jarvis; Ex. A-7, 06/14/2018 letter from C. Peele to T. Cleveland.

that discretion is foreclosed under 2.06(c) when the Indemnitee is wholly successful on the merits, in which case the Indemnitee *must* be indemnified.  If the Indemnitee is not wholly successful on the merits of a willful misconduct claim, it is up to the Bedrock board whether or not to indemnify him or her.  It is the preceding sentence which deals with advancement, and which is at issue in this motion.  That sentence is clear—Bedrock "shall" periodically advance defense costs to an Indemnitee when the other prerequisites are met.  The Company Agreement gives the Bedrock board no discretion in this regard.

Both Texas and Delaware law make clear that the right to advancement is not contingent on the right to ultimate indemnification.  They are two separate, but equally important, legal concepts.  To require Mr. Silverberg to prove he is entitled to indemnification *before* he is entitled to advancement would render the advancement provision meaningless, since he can only be entitled to indemnification *after* he is successful on the merits of this proceeding.  At that point, the proceeding will be over and Mr. Silverberg's request for advancement will be moot.  Such a reading of Section 2.06 would be absurd, and would eliminate the advancement rights afforded to Bedrock's managers in the Company Agreement.

Because Mr. Silverberg has met all the prerequisites that entitle him to the periodic advancement of legal and other expenses under the only rational reading of the Company Agreement, this Court should grant this motion for partial summary judgment.

**D.     This Court should grant supplemental relief to Mr. Silverberg's declaratory judgment claims and implement a procedure for the submission, dispute, and payment of Mr. Silverberg's legal fees and other expenses during the pendency of this action.**

Finally, this Court should include in its order granting Mr. Silverberg's requested declaratory judgment a procedure for the parties to follow for the submission, dispute, and payment

of legal and other expenses that Mr. Silverberg is entitled to receive as periodic advancement/reimbursement.

Under 28 U.S.C. § 2202 and Tex. Civ. Prac. & Rem. Code § 37.011, this Court may grant further relief based on a declaratory judgment whenever necessary or proper.  Here, Mr. Silverberg requests that this Court set forth a procedure for the submission, dispute and payment of expenses he is entitled to receive as periodic advancement/reimbursement.  Toward that end, Mr. Silverberg will file a proposed order with a detailed process he respectfully asks this Court to order.

## IV.   CONCLUSION

For these reasons, Mr. Silverberg respectfully requests that this Court (1) hold that he is entitled to periodic advancement or reimbursement of legal and other expenses (including the cost of any investigation and preparation) incurred defending against Plaintiffs and Bedrock's claims against him in this action, including such expenses he has incurred to date, any such expenses that he may incur in the future, and all expenses he incurred in preparing this motion; (2) grant Mr. Silverberg summary judgment on his declaratory judgment claim concerning such periodic advancement or reimbursement; and (3) enter his proposed order requiring Bedrock to provide such periodic advancement or reimbursement, and providing a procedure for the submission, payment, and dispute of expenses incurred.

Dated: August 22, 2019

Respectfully submitted,

HOWRY BREEN & HERMAN, L.L.P.

_____
Sean E. Breen
State Bar No. 00783715
rhowry@howrybreen.com
Randy R. Howry
State Bar No, 10121690
rhowry@howrybreen.com
Ryan D. Ellis
State Bar No. 24087470
rellis@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

*Attorneys for Defendant Stephen Blair*
*Silverberg and Intervenor FCI Capital LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2019, a true and correct copy of this document was served on all counsel of record via the Court's electronic filing system.


/s/  *Ryan D. Ellis*
Ryan D. Ellis

## APPENDIX OF EXHIBITS

| | |
|---|---|
| Exhibit A | Affidavit of Stephen Blair Silverberg |
| Exhibit A-1 | First Amended and Restated Company Agreement of Bedrock Funding Management, LLC, as amended |
| Exhibit A-2 | Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction |
| Exhibit A-3 | Bedrock's First Amended Counterclaims and Third-Party Petition |
| Exhibit A-4 | Silverberg's Third Amended Counterclaims and Third-Party Claims |
| Exhibit A-5 | May 17, 2018 Letter from Christopher Peele to Talia Jarvis |
| Exhibit A-6 | May 21, 2018 Letter from Tim Cleveland to Christopher Peele |
| Exhibit A-7 | June 14, 2018 Letter from Christopher Peele to Tim Cleveland |
| Exhibit A-8 | June 18, 2018 Letter from Tim Cleveland to Christopher Peele |
| Exhibit A-9 | Bedrock's Objections and Responses to Defendants' First Set of Interrogatories and Requests for Admissions |
| Exhibit B | Certified Court Reporter's Transcript of June 29, 2018 Hearing regarding Silverberg's Motion for Temporary Restraining Order; 419th Judicial District, Travis County, Texas. |